WATERFALL, ECONOMIDIS,
 CALDWELL, HANSHAW & VILLAMANA, P.C.
5210 E. Williams Circle, #800
Tucson, AZ  85711
(520) 745-7810

Barry Kirschner/SBN 005592
bkirschner@wechv.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benny Granado,<br>  Plaintiff,<br><br>vs.<br><br>Metropolitan Life Insurance Company; and NCI Information Systems, Inc. LTD Plan,<br>  Defendants. | NO.<br><br>**Complaint** |

Plaintiff Benny Granado ("Granado") for his complaint alleges:

**PARTIES/ERISA**

1. Plaintiff Granado is a 58 year old, long-time resident of Cochise County, Arizona who, for all relevant time, has been a participant in Defendant NCI Information Systems, Inc. LTD Plan ("NCI Plan") for long term disability ("LTD") coverage.

2. Jurisdiction over this matter is proper based on 29 U.S.C. § 1132.

3. Defendant NCI Plan is the administrator of the LTD benefit Plan out of which this claim arises.

4. Defendant Metropolitan Life Insurance Company ("MetLife") is the Claims Administrator of the relevant NCI Plan of LTD and its related short term disability ("STD") Plan.

5. Defendant MetLife owes Granado a fiduciary duty as Claims Administrator.

6. Defendant NCI Plan owes Granado a fiduciary duty as Plan Administrator.

7. Granado has filed his administrative appeal of the adverse decision denying benefits. MetLife has rejected Granado's appeal of the adverse LTD benefit decision. The dispute is ripe for civil action. *See* Exhibit 1, Granado's July 18, 2012 Appeal without internal exhibits, and Exhibit 2, November 27, 2012 letter to MetLife's Salvatore Marchese ("Marchese") responding to the opportunity to provide further information.

8. On information and belief, any payment of LTD benefits under the Plan to Granado would be from MetLife and not reimbursed by the NCI Plan.

9. Granado is an intended beneficiary of the NCI Plan.

10. The United States Congress stated its purpose in enacting the Employee Retirement Income Security Act ("ERISA"):

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

29 U.S.C. § 1001(b)

11. ERISA imposes a higher-than-marketplace quality standard on insurers to insure a full an fair review of claim denials.

12. Insurers are responsible for a standard of care in discharging duties in respect to discretionary claims solely in the interests of participants and beneficiaries of the NCI Plan.

13. Granado was employed as a Wireless Account Manager, Systems Engineer until October 22, 2010. Granado's regular occupation required outstanding analytical skills and the ability to maintain mental concentration consistent with his salary of

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

2

*Anderson v. Sun Life, et al.*
CV new

1    approximately $90,000 annually.

2    14.   As of September 14, 2010, Granado was actively at work and being treated by pain
3          clinic and other physicians. The pain clinic physician(s) diagnosed Granado's
4          medical difficulties as sufficiently severe to offer Granado surgery to implant a
5          spinal cord stimulator to assist in dealing with his pain and growing problems
6          secondary to his prescribed use of morphine and Xanax to help him cope with his
7          pain.

8    15.   Among the problems identified in his September and October pain clinic work ups
9          were irritative cervical radiculopathy with MRI documented multi-level stenosis,
10         cervicogenic headaches, myofascial pain syndrome, cervical pain, and a ganglion
11         cyst (which anticipated surgery).

12   16.   In 2010, Granado was prone to incidents of loss of consciousness. He was
13         diagnosed with orthostatic hypotension.

14   17.   Granado has experienced events where he has passed out behind a wheel.

15   18.   Granado suffered multiple heart attacks beginning at age 42. On October 28, 2010,
16         Granado suffered a heart attack which required air evacuation from Sierra Vista,
17         Arizona to St. Mary's Hospital in Tucson, Arizona. Granado suffered a loss of
18         consciousness at the time of his heart event.

19   19.   As of October 2010, Granado had a history of health problems including
20         cardiogenic shock, Bradycardia, Coronary Atherosclerosis, congestive heart failure,
21         myocardial infarction, low blood pressure, hypotension with dizziness and episodes
22         of near syncope, loss of consciousness, shoulder problems, neurogenic bladder,
23         degenerative disc disease ("DDD"), chronic back pain, chronic neck pain,
24         depression, chronic obstructive pulmonary disease ("COPD"), diabetes and a later
25         diagnosed radiculopathy.

26   20.   Granado's primary care physician ("PCP") Santsaran C. Patel, M.D. ("Patel")

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

3

Anderson v. Sun Life, et al.
CV new

recommended that Granado not return to work because he was disabled after the October 2010 heart event.

21. Patel's expressed medical basis for his finding of disability included coronary artery disease ("CAD"); neurogenic bladder; orthostatic hypotension; and chronic low back pain.

22. At least 3 times from October 2010 through February of 2011, Patel filled out attending physician statements (collective "APS forms") at MetLife's request on forms provided by MetLife. Each of the APS forms filled out stated his opinion that Granado was totally disabled.

23. The APS forms indicated that Granado would have difficulty sitting standing, and walking. The total time Patel believed Granado could tolerate for all three of these activities during a work day was as little as four and as many as 6 hours.

24. Granado's low back problems caused 24 hour per day prescribed narcotic intake for pain relief. A February 2011 note from the Veteran's Administration Hospital ('VA') assesses low back pain and states that Granado had stopped morphine and replaced it with vicodin and Valium. (*See* Exhibit 2, MetLife claim file ML-GR0264)

25. Granado reported increasing neck pain and lumbar spinal stenosis during November 2011. Tests conducted at the VA Hospital including an Electromyography (""EMG") confirmed that Granado suffered radiculopathy at C-7, one of the sources of neck pain, and neurological complications.

26. Granado's orthostatic hypotension was confirmed by occasional loss of consciousness.

27. Granado was a participant in the NCI STD Plan which was also administered by Claims Administrator MetLife.

28. The STD Plan evaluated Granado's medical condition and agreed that Granado was

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

4

*Anderson v. Sun Life, et al.*
CV new

1  disabled and eligible for STD benefits through his entire term of eligibility which
2  ended February 2011.

3  29.  The LTD and STD Plans were coordinated.  Without completing the STD term of
4  eligibility, a participant would not be eligible for LTD benefits.

5  30.  Rather than give deference to the decision acknowledging STD was appropriate
6  through February 2011, MetLife's LTD Plan rejected Granado's claim for LTD
7  benefits concluding that his medical problems were not sufficiently disabling to
8  cause him to be unable to work full time at his regular occupation.

9  31.  During the period STD benefits were granted from October 2010 to February 2011,
10  Granado was taking medications:

| Hydrochlorothiazide | spironolacton, | Venlafaxine, |
| calcium/vitamin D | naproxen | Advair diskus |
| amiodarone | aspirin | carvedilol |
| Ergocalciferol | fish oil | flurosemide |
| Omeprazole | Proventil | saw palmetto |
| simvastatin | vitamin B12 | fomosterol |
| mometasone | Pantoprazole | Valium |

15  32.  Granado was using heavy doses of medications including narcotic during the
16  relevant time period during which Defendants concluded that Granado was not
17  eligible for LTD benefits.

18  33.  The medications prescribed for Granado as of February 2011 included at least 5
19  with known central nervous system effects.  These are Vicodin (narcotic pain
20  reliever); Valium (Diazepam—anti-anxiety, muscle spasm relief); Flexeril
21  (Cyclobenzaprine- muscle relaxer); Naproxen (pain relief);Effexor (Depression)
22  and Remeron (Mirtizapine-Depression).

23  34.  Granado was awarded Social Security Disability Insurance ("SSDI") benefits for
24  being totally and permanently disabled effective 2010 with monetary entitlement
25  beginning March 2011.

26  35.  MetLife rejected Granado's LTD appeal knowing that the Social Security

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

5

Anderson v. Sun Life, et al.
CV new

1  Administration had determined Granado totally and permanently disabled and
2  awarded SSDI benefits to Granado.

3  36. NCI Plan's written standard for Total Disability applicable to Granado's LTD
4  benefit entitlement is less stringent than the applicable SSDI standard for
5  entitlement to benefits.

6  37. The Dictionary of Occupational Titles ("DOT") indicates that, without the ability
7  to sit 6 hours per day, an individual does not have the medical capability of
8  performing a full time sedentary job on a full time basis. *See Perryman v.*
9  *Provident Life*, 690 F.Supp.2d 917, 948-49 (D. Arizona 2010).

10 38. Treating physician Patel filled out MetLife APS Forms from November 2010 to
11  February 2011 with the opinions expressed that Granado could sit for 1, 2, or 4
12  hours in a single day.

13 39. The same forms expressed the treating physician's opinion that Granado had the
14  ability to work one hour and no more in a standing or walking position.

15 40. Granado's difficulty sitting was corroborated by imaging studies establishing DDD
16  in the low back, cervical radiculopathy at C-7, and joint disease for C3-C7.

17 41. Metlife reviewing physician, Phyllis A. Gerber, M.D. ("Gerber"), states in
18  reviewing Patel's February 16, 2011 APS: ". . . Physical capabilities sit for hours,
19  stand and walk one hour each, intermittently."

20     a. The omission of the word "4" when Gerber states Physical capabilities "sit
21        for hours" de-emphasizes, that the treating physician has expressed opinions
22        that Granado cannot sit for more than 4 hours; and that the combination of
23        time he could sit, stand, and walk add up (at most) to six, far less than a full
24        8 hour work day;

25     b. An alternative interpretation of Gerber's "for" hours is that it was incorrectly
26        transcribed and should be four (4) hours; and

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

6

*Anderson v. Sun Life, et al.*
CV new

|    |     |                                                                                                  |
|----|-----|--------------------------------------------------------------------------------------------------|
| 1  |     | c.   Either of the interpretations immediately above place Granado in a category                |
| 2  |     |      disabled from working full time according to the DOT and *Perryman*.                        |
| 3  | 42. | Patel also instructed (limited) Granado to avoid physical and mental exertion.                   |
| 4  |     | There is no medical opinion which addresses the inability of Granado to sit, stand,              |
| 5  |     | and walk for a total of 8 hours in the work day other than treating Patel, and                   |
| 6  |     | supports MetLife's decision to deny Granado's appeal.                                            |
| 7  | 43. | There is no medical opinion expressed in the claim file of MetLife which disagrees               |
| 8  |     | with Patel's assessment that Granado cannot tolerate more than the 4-6 hours total               |
| 9  |     | of sitting, standing, and walking during a work day, even at a sedentary position.               |
| 10 | 44. | Granado was treated for depression during the relevant time period including                     |
| 11 |     | medication for Major Depressive Disorder, anxiety, and panic disorder.                           |
| 12 | 45. | The nature of the condition "orthostatic hypotension " is dangerous. The danger to               |
| 13 |     | the public of an individual with such a condition includes being victimized by loss              |
| 14 |     | of consciousness while driving. The danger to the employee is danger to himself                  |
| 15 |     | because of unplanned loss of consciousness. The condition is associated with                     |
| 16 |     | deficiencies in mental energy which may be required to perform full time                         |
| 17 |     | employment in a professionally demanding job.                                                    |
| 18 | 46. | The inability to concentrate mentally is relevant to being able to perform a full time           |
| 19 |     | professional position and workload regardless of whether the occupation is                       |
| 20 |     | classified as "sedentary".                                                                       |
| 21 | 47. | Limited shoulder range of motion ,and other medical problems from a history of                   |
| 22 |     | shoulder problems Granado has, affects the ability of a person to deal at length with            |
| 23 |     | a computer screen and keyboard.                                                                  |
| 24 | 48. | MetLife failed to realistically assess the effect of the totality of medical conditions          |
| 25 |     | which contribute to Granado's disability when it denied his claim for LTD benefits,              |
| 26 |     | and again when it denied Granado's July 18, 2012 appeal supplemented with                        |

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ  85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

7

*Anderson v. Sun Life, et al.*
CV new

responses as requested by MetLife by November 27, 2012 letter. (*See* Exhibit 1 to this Complaint initiating Granado's civil action.)

49. MetLife allowed its structural conflict of interest as payor and decision maker to minimize its fiduciary type obligation to Granado and to favor its own interests to not pay Granado LTD benefits.

## COUNT I

## DECLARATORY RELIEF

50. Granado incorporates all paragraphs above as if fully set forth herein.

51. Granado seeks Declaratory Relief pursuant to 29 U.S.C. § 1132 for a Declaration that:

   a. He be entitled to LTD disability benefits pursuant to his claim made under the NCI Plan;

   b. He be awarded LTD benefits back to February 2011;

   c. Attorneys' fees and costs be awarded in appropriate amounts to Granado from Defendants; and

   d. All relief appropriate under the circumstances, equitable or legal, be provided.

RESPECTFULLY SUBMITTED March 15, 2013.

WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.

By   s/Barry Kirschner
     Attorneys for Plaintiff

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/3/15/13
Complaint FNL.wpd

8

*Anderson v. Sun Life, et al.*
CV new